UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| MILK STUDIOS, LLC, | X : | Civil Action No.: 14-cv-09362-PAC |
| Plaintiff, | : : | ECF Case |
| v. | : : | |
| SAMSUNG ELECTRONICS CO., LTD.; SAMSUNG ELECTRONICS AMERICA, INC., and SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, | : : : : | |
| Defendants. | : X | |

## PLAINTIFF MILK STUDIOS, LLC'S REPLY TO SAMSUNG'S OPPOSITION TO AN EXPEDITED TRIAL ON THE MERITS

Harley I. Lewin
James H. Donoian
McCARTER & ENGLISH, LLP
245 Park Avenue
New York, New York 10167
Tel.: (212) 609-6800
Fax: (212) 609-6921
hlewin@mccarter.com
jdonoian@mccarter.com

Lee Carl Bromberg
Lori J. Shyavitz
McCARTER & ENGLISH, LLP
265 Franklin Street
Boston, Massachusetts 02110
Tel.: (617) 449-6500
Fax: (617) 607-9200
lbromberg@mccarter.com
lshyavitz@mccarter.com

**TABLE OF CONTENTS**

INTRODUCTION ..................................................................................................................1

    **A.**    Milk Seeks An Expedited Trial Not A Preliminary Injunction ...............................3

    **B.**    Milk Acted Prudently And Reasonably ..................................................................3

        **1.**    Samsung's Conduct During Negotiations....................................................3

        **2.**    Samsung's Conduct Post-Negotiations.......................................................4

    **C.**    Plaintiff's Harm Is Not Theoretical ........................................................................6

    **D.**    No Prejudice To Samsung ......................................................................................7

    **E.**    Milk's Infringement Claims Are Strong .................................................................8

CONCLUSION.................................................................................................................10

## TABLE OF AUTHORITIES

**CASES**                                                                                                                   **PAGE**

*Apple v. Samsung*, Civ. No. 11-01846-LHK, 2011 WL 1938154 (N.D. Cal. 2011)………..………9

*Bulman v. 2BKCO, Inc.*, 882 F. Supp. 2d 551 (S.D.N.Y. 2012)…………………………….……7

*Clifford Ross Co. v. Nelvana, Ltd.*, 710 F. Supp. 517 (S.D.N.Y. 1989)…………………..……3

*Clifford Ross Co. v. Nelvana Ltd.*, 883 F.2d 1022 (2d Cir. 1989)……………………….…..3

*Digital Sin, Inc. v. Does 1-176*, 279 F.R.D. 239 (S.D.N.Y. 2012)…………………………...…1

*Grenadier Corp. v. Grenadier Realty Corp.*, 568 F. Supp. 502 (S.D.N.Y. 1983)………………..4

*Kraft Gen. Foods, Inc. v. Allied Old English, Inc.*, 831 F. Supp. 123 (S.D.N.Y. 1993)………..…3

*New York City Triathlon, LLC v. NYC Triathlon Club, Inc.*, 704 F. Supp. 2d 305 (S.D.N.Y. 2010)………………………………………………………………………………………………7

*Parrot Jungle, a Corp. of State of Fla. v. Parrot Jungle, a Corp. of State of N.Y.*, 512 F. Supp. 266 (S.D.N.Y. 1981)……………………………………………………………………………4

*Pearson Educ., Inc. v. Doe*, Civ. No. 12-4786(BSJ)(KNF), 2012 WL 4832816 (S.D.N.Y. Oct. 1, 2012)………………………………………………………………………………………………1

*Perfect Pearl Co. v. Majestic Pearl & Stone, Inc.*, 887 F. Supp. 2d 519 (S.D.N.Y. 2012)………8

*Scarves by Vera, Inc. v. Todo Imports Ltd. (Inc.)*, 544 F.2d 1167 (2d Cir. 1976)……………....9

*Sunenblick v. Harrell*, 895 F. Supp. 616 (S.D.N.Y. 1995)………………………………………10

**INTRODUCTION**

Milk has shown a reasonable probability of success on the merits, irreparable injury, and that such injury will accelerate absent an expedited schedule as Samsung threatens to destroy Milk's brand equity by its unilateral seizure of the MILK mark. Samsung offers no legitimate reason not to move this case expeditiously.

Samsung's use of the MILK mark seems to change with the wind. It claimed it was offering only music listening services but then, expanded to video streaming. It said the service was offered only on Samsung mobile devices, then it expanded to television. First, it was an app only for Samsung mobile devices, then it expanded to any internet connected device (*i.e.*, computers). Samsung claims its use of "Milk" is accompanied by, and therefore secondary to, "Samsung." Now, Samsung uses "Milk" alone. When Milk first learned of Samsung's initial actions, they were modest with some trademark filings and little information released other than an announcement that Samsung would rebrand its current music service. Samsung then made the internal decision to disregard Milk and proceed with all guns blazing. Samsung's intent is clear, unequivocal, and flies in the face of years of knowledge of Milk's rights.

Samsung's opposition to Milk's request for an expedited trial schedule relies on three tenets: (1) Milk delayed seeking relief; (2) Milk's claims of harm are theoretical; and (3) Samsung will be prejudiced. However, the applicable standard for expedited discovery and trial is "reasonable and good cause." *Digital Sin, Inc. v. Does 1-176*, 279 F.R.D. 239, 241 (S.D.N.Y. 2012); *see also Pearson Educ., Inc. v. Doe*, Civ. No. 12-4786(BSJ)(KNF), 2012 WL 4832816, at *3-4 (S.D.N.Y. Oct. 1, 2012)(listing cases). Samsung's tenets do not refute Milk's position.

Samsung itself is responsible for much of the delay in Milk's filing of this action because it dragged out settlement discussions, all the while planning a huge roll-out and marketing blitz

1

for its unauthorized use of MILK.  One cannot fault the prudent conduct of Milk in awaiting a settlement allegedly in the offing and believing that its long business relationship with Samsung would prevail with a reasonable settlement.

Samsung's diversionary arguments based on misstated facts or unsupported legal premises do not alter or offset the merit of Milk's need for a speedy trial.  That Samsung offers 24 hour radio-like streaming of music and video, or offers an "app"  while Milk's use is part of its overall services via, *e.g.,* the Internet, does not support the contention that there is no likelihood of confusion. It is the ultimate consumer, the one who searches for music or a video or related information, that is relevant to an infringement case, not the technological means by which that same content is accessed by that consumer,  be it via a phone, tablet, TV or computer.

Samsung's cursory review of cases that have gone to trial but have not been expedited is another red-herring, as it omits cases which have been expedited but settled before trial, and cases where expedited trial was granted after denial of a preliminary injunction.  Unlike the cases cited by Samsung, the instant matter arises 100% in the fast-paced ever-evolving digital space.  In addition, none of the cited cases involve a junior user as large as Samsung.  The combination of these two factors, the hyper-paced digital landscape, and the sheer size of Samsung, warrant special treatment for this matter. Otherwise, by using the Internet and its multi-outlet national marketing Samsung is likely to wipe out Milk as a distinctive brand.

Finally, there is no prejudice to Samsung by reason of one of the three Defendants residing in Korea.  Samsung is constantly engaged in similar intellectual property disputes in the U.S. and throughout the World and is well-prepared to move documents between its various entities.  Samsung states no facts or law to support its claim of prejudice.

ME1 19741131v.3

### A.   Milk Seeks An Expedited Trial Not A Preliminary Injunction

The standard for seeking an expedited trial is not the same as the standard for a preliminary injunction. Samsung's arguments regarding delay are fundamentally misplaced. A preliminary injunction, stopping ongoing conduct *pendente lite,* is vastly different from an order to expedite a trial on the merits. Milk's position specifically recognizes that it is *not* requesting a preliminary injunction, noting that such a request would be a misuse of the Court's resources. *See* Plaintiff's Memorandum of Law in Support of its Motion for Expedited Trial p.1 ("Plaintiff's Motion"). Samsung has not cited any case law holding that a delay would dictate denying a motion for expedited trial.[1] Milk's analysis clearly indicates it has a strong meritorious case warranting an expedited full adjudication.

### B.   Milk Acted Prudently And Reasonably

#### 1.   Samsung's Conduct During Negotiations

Milk at all times acted reasonably and in good faith in trying to resolve the dispute, and thus it should not be denied expedited relief due to any alleged delay. *See e.g.*, *Clifford Ross Co. v. Nelvana, Ltd.*, 710 F. Supp. 517, 521 (S.D.N.Y. 1989) *aff'd sub nom. Clifford Ross Co. v. Nelvana Ltd.*, 883 F.2d 1022 (2d Cir. 1989); *Kraft Gen. Foods, Inc. v. Allied Old English, Inc.*, 831 F. Supp. 123, 136 (S.D.N.Y. 1993). Milk demanded that Samsung stop using the MILK trademark within weeks of learning of Samsung's initial action, and before it announced the rebranding of Samsung's music entertainment service as MILK. Declaration of Mazdack Rassi sworn to on January 5, 2015 ("Rassi Dec."), at ¶ 30.

In April 2014, Samsung represented its use of MILK MUSIC (as a whole phrase) was distinguishable from MILK STUDIOS, and that it limited the service to owners of Galaxy

---

[1] Further the cases are inapposite: unlike here, plaintiffs in *Citibank*, *Transcience*, *Hologic*, and *Bus. Trends* cite no reasons for delay such as settlement negotiations or investigation of claims.

3

devices.  *Id.* at ¶ 35, Ex. N.  However, in July,  Milk learned Samsung had started using "Milk" alone as its mark.  *Id*. at ¶ 30. Milk immediately brought this to Samsung's attention and followed up seeking a resolution of this issue.  Rassi Dec., at ¶ 35, Ex. N.

On July 25, 2014, Samsung replied that it was "discussing internally a *settlement proposal*" and was not "ignoring the situation."  *Id.*  On Friday August 22, 2014, however, Samsung informed Milk that Samsung reversed its position, stating that it was no longer interested in reaching a business solution.  *Id.*

To say that Milk wanted to avoid a substantial financial burden is to understate the reality of litigation against the behemoth that is Samsung.  Prudence dictated that Milk pursue ongoing discussions with Samsung, especially given the existing business relationship between the parties and the representations by Samsung's counsel, Milk cannot now be faulted for not initiating this suit sooner.  *See Grenadier Corp. v. Grenadier Realty Corp.*, 568 F. Supp. 502, 504 (S.D.N.Y. 1983) (no prejudice for laches in a trademark case where settlement correspondence and negotiations indicated that plaintiff did not forego or intend to forego its trademark rights). *Parrot Jungle, a Corp. of State of Fla. v. Parrot Jungle, a Corp. of State of N.Y.*, 512 F. Supp. 266, 270 (S.D.N.Y. 1981) (plaintiff did not delay over period of gradual encroachment).

    **2.**    **Samsung's Conduct Post-Negotiations**

Within weeks of terminating settlement discussions in August of 2014, Samsung rolled out the major launch of its MILK  entertainment services. Samsung's clearly intended to hold Milk at bay as long as possible while finalizing its marketing plans. Rassi Dec. at ¶ 36, Ex. O.

In September 2014, Samsung posted large ads for its MILK entertainment service in its new storefront around the corner from Milk's headquarter offices and studios.  *Id.*

4

ME1 19741131v.3

On November 19, Samsung launched its new MILK *video* entertainment service for Galaxy devices and on November 23, Samsung advertised its MILK entertainment services during the nationally televised American Music Awards, including a promo offering curated playlists (similar to that presented by Milk itself).

Milk filed its complaint a day later.

Samsung also conveniently neglects to mention that part of the delay was due to Samsung's dragging its own feet during the meet-and-confer process for the motion.

On November 25, Samsung's prior counsel requested a copy of the complaint, during which Milk's counsel advised that it would be seeking an expedited trial. Milk, as a courtesy, then waited to be advised of selection of counsel by Samsung rather than proceed unilaterally.

On December 15 (two days before an answer was due), Samsung's new litigation counsel requested an extension, at which time Milk's counsel again stated its intent to to seek an expedited trial. Samsung's counsel asked for time to consult with its client on its position. On December 16, Samsung's counsel advised that he would be discussing the expedited trial with Samsung shortly. On December 18, in response to Milk's inquiry, Samsung's counsel advised that it should have an answer on the expedite trial issue by end of the next day (Friday, December 19). On December 22, having still not received an answer from Samsung, Milk sent counsel a draft letter that it proposed sending to the court requesting an expedited trial. Samsung's counsel then, finally, indicated that it would oppose an expedited trial and filed its reply letter on December 24.

Within days of filing its reply letter, on January 5, 2015, Samsung, again contrary to its prior representations, announced the expansion of its MILK entertainment services onto new platforms beyond mobile, and that its MILK service will be "available this spring accessible *via*

5

*all Internet-connected computers.*"  Declaration of Jim Donoian sworn to on January 7, 2015 ("Donoian Dec."), at ¶ 3, Ex. A.

Milk has at all times acted promptly and reasonably in notifying Samsung of its rights and seeking an amicable resolution given Milk's ignorance of Samsung's actual intent or plans for the use of the word MILK alone, the rapid expansion of the services to video and to non-mobile, and soon to non-Samsung devices relying on Samsung's representations now understood to be false. *See also, Id.* at  ¶ 3.  Milk acted as expeditiously as possible when it discovered that it had been duped.

### C.   Plaintiff's Harm Is Not Theoretical

Samsung does not refute Milk's argument or the factual predicate as to the harm Milk will suffer, but rather relies on two main theories to support that the harm to Milk is "theoretical": (1) the instances of actual confusion are "anecdotal" and (2) there is no "actual harm."  A truth does not change simply because it is recited first as an anecdote, nor is it refuted by calling it a mere "story."  The instances of actual confusion which Milk will prove at trial are, at this stage, strong corroboration of likelihood of confusion that support the *prima facie* merit of Milk's claims.  The cases cited by Samsung regarding actual confusion involve either survey evidence submitted from the defendant outweighing anecdotal evidence of confusion – which Samsung itself has not offered - or examples of confusion among plaintiff's own employees or friends, not business clients and partners.[2]

Actual harm is not a prerequisite to a speedy trial.  Rather, Milk's burden is to show a *prima facie* likelihood of confusion and that an ordinary trial schedule would render a final

---

[2] In *Denimafia v. New Balance Athletic Shoe*, defendant's survey evidence outweighed plaintiff's anecdotal evidence.  *Paco Sport* involved confusion of plaintiff's employees.  *Nora* involved affirmative evidence of no confusion.

remedy virtually moot.  Even if Milk were held to the higher preliminary injunction standard, the risk of harm outlined herein is sufficient to meet that burden.  *See Bulman v. 2BKCO, Inc.*, 882 F. Supp. 2d 551, 564 (S.D.N.Y. 2012) (examples of customer confusion together with defendant's plans to release a new app indicated that future confusion and prospective loss of goodwill was a virtual certainty); *New York City Triathlon, LLC v. NYC Triathlon Club, Inc.*, 704 F. Supp. 2d 305, 343 (S.D.N.Y. 2010) (prospective loss of goodwill alone was sufficient to support a finding of irreparable harm).

Samsung would have Milk wait, and suffer further harm, while Samsung completes its roll out to include all internet-connected devices, before requesting a speedy trial.[3]  Samsung uses irrelevant statistics to support the false dialectic that trademark cases are not worthy of being expedited arguing historically those that have gone to trial were not so treated.  Samsung's statistics ignore those cases which were expedited but were settled and or otherwise disposed of before trial (as most cases involving trademarks settle).[4]

Contrary to Samsung, courts often grant expedited schedules for discovery, injunctions and trial.  Federal Rule 65 expressly permits courts to invoke their discretion to consolidate preliminary injunctions with expedited  permanent injunction hearings.  *See* Fed. R. Civ. P. 65(a)(2).  Indeed, in 1997, Plaintiff's counsel had Judge Sotomayor deny a request for a preliminary injunction in a trademark case, but, recognizing the need for both parties to have a quick decision, decided *sua sponte* to go trial in four weeks.  *See* Declaration of Harley I. Lewin, sworn to on January 27, 2015 ("Lewin Dec."), at ¶ 3, Ex. A.  The matter settled before trial.  *Id.*

### D. No Prejudice To Samsung

---

[3] Samsung argues both that Milk has delayed, and on the other that Milk's request is premature.
[4] For example, in the cases cited by Samsung, the parties settled directly after the answer was filed (*CJ Products*), and settlement negotiations and an appeals process following the grant of a motion to dismiss delayed proceedings (*Starter*).

That one of the three Defendants is outside the United States does not offset the need to speedily resolve this matter, especially when the other two defendants are directing the infringing activities.  Lewin Dec. at ¶¶ 4,5; Ex. B, C.  Samsung has enormous resources at its disposal.  The slight extra cost of expediting a matter that, in some part, involves a Korean entity is far more easily borne by Samsung than it is by Milk.  Also, from the time Milk first contacted Samsung, Samsung was on notice of the possibility of this lawsuit.  Samsung cannot reasonably object to an expedited trial, given its knowledge of Milk's claims for nearly one year and thus has had ample time to prepare.  *See Perfect Pearl Co. v. Majestic Pearl & Stone, Inc.*, 887 F. Supp. 2d 519, 545 (S.D.N.Y. 2012) (no prejudice where defendant was on notice of possibility of lawsuit).

This case does not involve complex issues or technology.  Discovery will be highly focused on Samsung's selection, adoption and use of MILK as a trademark, and its knowledge of Milk's use of MILK.  Samsung filed its trademark applications and announced its rebranding of its HUB music service less than a year ago, further limiting discovery.  The U.S. Defendants involved in the marketing and distribution of Samsung's infringing activities likely possess most of the key discoverable information, a point which Samsung does not address.

Samsung is not new to expedited discovery given its propensity for litigation and is likely fully prepared therefor.  For example, in *Apple v. Samsung*, Civ. No. 11-01846-LHK, 2011 WL 1938154 at * 2 (N.D. Cal. 2011), prompted by the judge's suggestion to expedite trial, Apple obtained an expedited schedule for a far more complex case, with wide ranging infringement claims involving trade dress, trademarks, and design and utility patents. Samsung was not prejudiced by such expedited schedule in *Apple* and will suffer no prejudice here.

    **E.**    **Milk's Infringement Claims Are Strong**

8

Having put forth little rationale, few facts and little law to refute Milk's arguments, Samsung resorts to an analysis of the likelihood of confusion factors to persuade the court to deny Milk's request.  Although Milk is not required to prove a likelihood of confusion at this time, examination of some key facts cited by Samsung highlight the weakness of its argument.

Samsung claims that the two marks are distinguishable *but* Samsung has largely dropped its house mark and uses MILK alone.  *See*  Lewin Dec. ¶ 4, Ex. B.  When Samsung does use its name, its usage enhances a likelihood of confusion or creates reverse confusion.  *See* Samsung Opposition Brief at 18; *see also* Milk's Brief at 15.

Review of Samsung's submission of purported third party use *supports* rather than refutes Milk's claim that its MILK mark is strong and distinctive in the marketplace.  Indeed, Samsung offers *no identical MILK marks*, like those used by Milk and Samsung.  The third party marks also do not use the word MILK alone, but in various phrases that connote specific and very different meanings such as "Milk Carton Kids" (*i.e.*, lost children) or "Milkshake" for rock bands, or "Remember the Milk" (*i.e.*, don't forget the shopping list).  *See* Lewin Dec. at ¶¶ 5-17; *See Scarves by Vera, Inc. v. Todo Imports Ltd. (Inc.)*, 544 F.2d 1167, 1173-74 (2d Cir. 1976) (citing registrations contained combinations of words rather than word "Vera" alone).

Samsung's submission of USPTO records is likewise insufficient to show actual third-party use**.**  Samsung introduced no other evidence that these trademarks are actually used, were well promoted, or are actually recognized by consumers at all, let alone for the relevant goods and services at issue here.  "[T]he existence of these registrations is not evidence of what happens in the market place or that customers are familiar with their use … "  *Scarves by Vera, Inc.*, 544 F.2d at 1173-74 (citation omitted)("third-party use has less effect where the third-party marks are used to promote entirely unrelated products") *citing Lilly Pulitzer, Inc. v. Lilli Ann*

9

mere existence but upon proof of their usage and customer awareness of such marks"). The alleged infringer must demonstrate that the third-party marks were "actually used by third-parties, that they [are] well promoted or that they [are] recognized by consumers." *Scarves by Vera,* 544 F.2d at 1173. Samsung's submission does not refute the strength of the MILK mark as used by Milk for its goods and services; rather it goes to support that Milk's adoption of MILK was arbitrary, resulting in a strong mark that is distinctive in its space.

## CONCLUSION

For the foregoing reasons, Milk requests that the Court exercise its broad case management authority and set an expedited case schedule leading to trial in May 2015.

Dated: New York, New York
January 27, 2015

                McCARTER & ENGLISH, LLP

                By:   s/Harley I. Lewin
                Harley I. Lewin
                James H. Donoian
                245 Park Avenue
                New York, New York  10167
                Tel.: (212) 609-6800
                Fax: (212) 609-6921
                hlewin@mccarter.com
                jdonoian@mccarter.com

                Lee Carl Bromberg
                Lori J. Shyavitz
                McCarter & English, LLP
                265 Franklin Street
                Boston, Massachusetts  02110
                Tel.: (617) 449-6500
                Fax: (617) 607-9200
                lbromberg@mccarter.com
                lshyavitz@mccarter.com