UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------X

MILK STUDIOS, LLC,

     *Plaintiff,*

  -against-

SAMSUNG ELECTRONICS CO., LTD;
SAMSUNG ELECTRONICS AMERICA,
INC., AND SAMSUNG
TELECOMMUNICATIONS AMERICA,
LLC,

     *Defendants.*

------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: March 26, 2015

14 Civ. 09362 (PAC)

**OPINION & ORDER**

HONORABLE PAUL A. CROTTY, United States District Judge:

**DISCUSSION**

### I. Background

  Most of us think of milk as a white liquid produced by the mammary glands of mammals, but in this case "Milk" is at the center of a dispute about trademarks. Plaintiff Milk Studios, LLC ("Milk") is a "multimedia and creative content business," which began as a photography studio in 1998 and has expanded into several other businesses, including advertising, film equipment rental, an art and media gallery, and the operation of a digital editorial platform with music and video streaming, music production, video production, digital content production, and post-production editing for digital media. Pl. Mem. at 1, 3-4. Milk owns the federally registered trademarks "Milk," "Milk Made," "Milk Gallery," "Milk Equipment Rental," and "Milk

1

Studios." *Id.* at 7. Milk possesses "considerable goodwill and equity in Milk's MILK trademark and brand." *Id.* at 5. Milk uses "Milk Made" for its digital editorial platform. *Id.* at 4.

Samsung Electronics Co., Samsung Electronics America, and Samsung Telecommunications America, LLC (collectively, "Defendants" or "Samsung") manufacture, develop, and market electronics and digital media, and recently launched a music and video streaming software application under the names "Milk Music" and "Milk Video." *Id.* at 8-9; Def. Mem. at 8-9. Samsung's Milk application initially began as a music streaming service usable exclusively on Samsung products; it has now expanded to video. Pl. Mem. at 8-9. Samsung launched the Milk Music service in March 2014. *Id.* at 10. Samsung and Milk have collaborated on at least 18 occasions and Samsung's employees have visited Milk's facilities and worked with Milk personnel. *Id.* at 9-10.

On March 21, 2014, Milk contacted Samsung and demanded that Samsung cease use of the mark Milk in connection with music streaming. *Id.* In July 2014, Samsung informed Milk that Samsung was internally discussing a settlement proposal, but in August 2014 Samsung informed Milk that Samsung would not agree to a settlement. *Id.* Milk filed suit on November 24, 2014, alleging trademark infringement arising out of Samsung's use of Milk in conjunction with its streaming service. *Id.* On January 8, 2015, Milk filed a motion for an expedited trial on the merits. For the reasons stated below, the application is denied.

## II. Analysis

Milk claims that allegations of trademark infringement are particularly well-suited for "expedient resolution" at trial because the injured party suffers irreparable harm, and that Milk will likely prevail on its claims and therefore will be irreparably harmed if trial is not expedited. Pl. Mem. at 12-24. Samsung opposes the motion, pointing to Milk's desultory pace in initiating

suit and arguing that imposing such a schedule would prejudice Samsung and that Milk cannot show a likelihood of success on the merits. Def. Mem. at 7-22.

The legal standard which Milk seeks to apply here is a moving target. The motion is based on an amalgamation of Federal Rules of Civil Procedure 16(a)(1), 65(a)(2), 26(d), and 34(b)(2)(A). Pl. Mem. at 11-12. Milk also urges the Court to examine the irreparable harm Milk will suffer in the absence of expedited proceedings and Milk's likelihood of success on the merits. *Id.* Indeed, Milk seeks to use the preliminary injunction standard as both a sword and a shield—Milk relies on its allegations of irreparable injury and likelihood of success, yet later states that Samsung's arguments regarding delay are misplaced because they are only applicable in the preliminary injunction context. Pl. Reply at 3. Notably, Milk later argues that its only burden is "to show a *prima facie* likelihood of confusion and that an ordinary trial schedule would render a final remedy virtually moot." *Id.* at 6-7. Regardless of the standards Milk would like to apply, in evaluating this request the Court will apply the standard for expedited discovery, using a "flexible standard of reasonableness and good cause." *See Ayyash v. Bank Al-Madina*, 233 F.R.D. 325, 327 (S.D.N.Y. 2005).

"'Good cause may be found where the need for expedited discovery, in consideration of the administration of justice, outweighs the prejudice to the responding party.'" *Pearson Educ., Inc. v. Doe*, 2012 WL 4832816, at *4 (S.D.N.Y. Oct. 1, 2012) (quoting *Semitool, Inc. v. Tokyo Electron Am., Inc.*, 208 F.R.D. 273, 276 (N.D. Cal. 2002)). Here, Milk has articulated no need for expedited discovery, motion practice, or trial, beyond the fact that it believes it has been wronged and would like Samsung to stop using the allegedly infringing mark. Milk has not demonstrated, on the factors it seeks to have the Court examine, a likelihood of success on the merits or irreparable harm. Milk has not demonstrated that its mark is particularly strong, that

3

the marks are similar in context, that the services offered under the mark are similar or competitive, that Milk has any plans to bridge the gap, that its consumers have been or will be confused,[1] or that Samsung has acted in bad faith. Nor has Milk shown that an ordinary schedule would moot any ultimate remedy. Milk's complaint consists of allegations standard in a trademark infringement case and does not demonstrate a crucial need for expedition. This is not to say that Milk will not be able to prevail on the merits in a subsequent motion or trial, but at this stage, Milk has failed to demonstrate a need for expedited proceedings.

Despite its feverish recitation of the harm likely to befall Milk should it fail to obtain an expedited schedule in this matter, Milk never moved for a preliminary injunction. Milk states that "[a]lthough this case presents a solid basis for a preliminary injunction, in fairness to the Court and the parties, Milk instead seeks expedited proceedings in order to permit the Court to address the merits only once and on a full record, but before Milk's brand reputation and associated goodwill has been irreparably destroyed." Pl. Mem. at 1. Such a position is untenable. If Milk believed it had substantial grounds upon which it could bring a preliminary injunction motion, Milk should have done so. Having made the decision not to file such a motion, Milk's allegations of impending irreparable harm fall flat.[2]

---

[1] Milk's showing of confusion consists of assorted text messages and emails in which acquaintances of Milk employees merely inquire whether Milk Studios has partnered with Samsung. Pl. Mem. at 17; Rassi Decl., Ex. T. This demonstration is insufficient to support Milk's allegations of a need for expedited proceedings. *Denimafia Inc. v. New Balance Athletic Shoe, Inc.*, 2014 WL 814532, at *19-20 (S.D.N.Y. Mar. 3, 2014).

[2] Milk argues that because Samsung repeatedly dangled settlement offers before Milk and thereby coerced Milk into not filing suit, Milk should not be penalized for the delay. But Milk fails to explain why it needed almost three and a half months after Samsung informed Milk that there would be no settlement to file suit, and moreover the parties' settlement discussions are not a valid excuse for delay. *See Two Kids From Queens, Inc. v. J & S Kidswear, Inc.*, 2009 WL 5214497, at *4 (E.D.N.Y. Dec. 30, 2009). In any event, Milk's delay is not fatal to its claim on the merits; but it is fatal to this motion.

## CONCLUSION

For the foregoing reasons, the motion for expedited proceedings and trial is denied. In light of the filing of Milk's Amended Complaint withdrawing the two counts which Samsung sought to dismiss, Samsung's request for leave to file a motion to dismiss is denied as moot. The Clerk of the Court is directed to terminate the motions at Docket 16 and 22. The parties are directed to submit a joint proposed civil case management plan by April 15, 2015.

Dated: New York, New York  
       March 25, 2015

SO ORDERED

*/s/ Paul A. Crotty*  
PAUL A. CROTTY  
United States District Judge